## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**COREY L. JOHNSON,**

      **Plaintiff,**

**v.**                                **Case No. 5:23-cv-207-WFJ-PRL**

**UNITED STATES OF AMERICA,**
**FEDERAL BUREAU OF PRISONS,**
**B.M. ANTONELLI, RICHARD LI,**
**MICHAEL BERMAN, M. GRAHAM,**

      **Defendants.**

_____/

### Report and Recommendation[1]

Corey L. Johnson, a federal inmate at the United States Penitentiary Coleman ("Coleman"), brought this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972),[2] alleging the defendants—the Federal Bureau of Prisons ("BOP"), Dr. Richard Li, Michael Berman, B.M. Antonelli, and M. Graham— violated his Eighth Amendment rights.[3] (Doc. 1). Johnson also sues the United States of America under the Federal Tort Claims Act ("FTCA"). (*Id.*). The defendants move to dismiss

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The United States Supreme Court established the availability of a cause of action against federal officials in their individual capacities for violations of federal constitutional rights in *Bivens*, 403 U.S. at 394–97.

[3] Dr. Richard Li is the lead medical director at Coleman. (Doc. 1 at 13). Michael Berman is the assistance health services administrator responsive for day-to-day operations of health services at Coleman. (*Id.*). B.M. Antonelli was the complex warden at Coleman during the relevant time and had "final authority and responsibility for the promulgation, creation, and implementation of policies and procedures at USP Coleman." (*Id.* at 12). M. Graham was the associate warden responsible for overseeing the day-to-day operations at Coleman during the relevant time. (*Id.* at 12).

1

under Federal Rules of Civil Procedure 12(b)(6) and (c) and argue that Johnson failed to state a cognizable claim under *Bivens* and the FTCA. (Doc. 20). I partially agree and respectfully submit that Defendants' motion to dismiss should be granted in part and denied in part.

## I. Legal Standards

Rule 12(b)(6) permits dismissal when a plaintiff fails "to state a claim upon which relief can be granted[.]" To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Moreover, the court may dismiss a claim when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). The standard under Rule 12(c) is the same as the standard for Rule 12(b). *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).

## II. Johnson's Allegations

Johnson is a federal inmate in the BOP's custody since 2008. (Doc. 1 at 14). Before 2019, Johnson had no serious medical diagnoses. (*Id.*). In March 2019, Johnson arrived at United States Penitentiary Big Sandy ("Big Sandy") where he began experiencing "internal itch, daily fatigue, abdominal pain, blurred vision, and spotted skin discoloration." (*Id.*). A

medical provider at Big Sandy performed Johnson's blood work that showed high a red blood cell count, high hematocrit levels, and high hemoglobin levels. (*Id.*). Johnson followed up with the medical staff at Big Sandy in August and September 2019 who told Johnson there was nothing wrong with him. (*Id.*). In December 2019, Johnson went to Highland Cancer Center where providers performed blood work, diagnosed Johnson with Polycythemia Vera—a type of blood cancer—and performed a phlebotomy to treat him. (*Id.* at 15). The Highland provider told Johnson he must receive weekly phlebotomies to stay alive. (*Id.*). Johnson returned to Highland monthly for treatments but complained to providers at Big Sandy and filed grievances regarding their failure to administer weekly treatments. (*Id.* at 16).

In 2020, Johnson was unable to receive his outside medical treatments from March to September because of COVID-19, and health services would not administer the treatments despite Johnson's requests. (*Id.* at 16–17). During this time, Johnson continued experiencing Polycythemia Vera symptoms. (*Id.* at 17).

In October 2020, Johnson was transferred to Coleman. (*Id.*). Johnson notified the intake medical staff about his condition, and they told him he would receive his treatment in the upcoming weeks. (*Id.* at 18). In November, Johnson complained to Li and Berman, verbally and in writing, that he was suffering from Polycythemia Vera symptoms. (*Id.*). In December, Johnson had his first visit with Li during which he complained of his symptoms— internal itch, bloat, abdominal pain, fatigue, dizziness, and blurred vision—and requested a phlebotomy. (*Id.* at 18–19). Li refused to treat Johnson, would not refer Johnson to a hematologist, and told Johnson he was on a waiting list for treatment but no one received timely treatment at the prison. (*Id.* at 19). When Johnson advised Li of the risks of him not receiving a phlebotomy—heart attack, stroke, and clogged arteries— Li told Johnson he

3

would be fine and to drink a lot of water. (*Id.*). During a walk-through of Johnson's unit, Johnson complained to Antonelli about Li's failure to treat him, but Antonelli told Johnson that he did not have time to deal with the issue. (*Id.* at 19).

In February 2021, health services performed blood labs on Johnson which showed his elevated high red blood cell count, high hematocrit levels, and high hemoglobin levels. (*Id.* at 20). When Johnson encountered Li, he refused to talk to Johnson. (*Id.*). From March to June 2021, Johnson submitted many sick call requests to health services explaining that he was suffering, but Li and Berman ignored the requests. (*Id.* at 21). Johnson also filed grievances against Li. (*Id.* at 20). Graham responded to Johnson's grievances about Li's failure to treat him and stated that a plan of care was being put in place for Johnson. (*Id.*).

In July 2021, after nine months, Johnson finally received a phlebotomy at the Florida Cancer Center. (*Id.* at 22). The hematologist at Florida Cancer Center told Li and Berman that Johnson could experience severe illness or possibly death without timely treatment. (*Id.*). The hematologist increased Johnson's aspirin level to thin his blood and prevent clogged arteries. (*Id.*). Johnson did not receive any treatments again until December 2021 despite making multiple sick call requests. (*Id.* at 23). In October 2021, Johnson emailed Li to follow up on his unanswered sick calls but received no response. (*Id.*). Johnson continued to file grievances against Li and Antonelli. (*Id.*). Graham responded by alerting Johnson that a new consultation was being ordered for him. (*Id.* at 24).

On January 18, 2022, an ultrasound revealed that Johnson had a mild hepatomegaly and borderline splenomegaly. (*Id.*). In April 2022, Johnson received his third phlebotomy since he arrived at Coleman. (*Id.*). In May, June, July, August, September, October, November, and December 2022, and January 2023 Johnson received phlebotomies. (*Id.* at

4

24–25). In March 2023, after not receiving phlebotomies in February and March, Johnson initiated this suit. (*Id.* at 25).

### III.   Discussion

#### a.  *Bivens* claim against the Federal Bureau of Prisons, Li, Berman, Antonelli, and Graham

Johnson asserts that the BOP, Li, Berman, Antonelli, and Graham were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. (Doc. 1). The defendants argue in their motion to dismiss that Johnson's claims are not cognizable under *Bivens* after the Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017). (Doc. 20 at 4–18). The defendants also argue that Johnson fails to state an Eighth Amendment claim and that they are entitled to qualified immunity. (*Id.* at 19–24).

#### i.   Claim against the Federal Bureau of Prisons

As an initial matter, Johnson's attempt to sue the BOP for deliberate indifference under *Bivens* fails. The BOP is immune from suit for constitutional tort claims. "While a plaintiff may bring a *Bivens* action against a federal officer in his individual capacity, a plaintiff may not bring a *Bivens* action against a federal agency or a federal officer acting in his official capacity." *Solliday v. Fed. Officers*, 413 F. App'x 206, 209 (11th Cir. 2011) (citing *Malesko*, 534 U.S. at 71; *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994)). Claims against federal agencies and federal officials in their official capacity are treated as claims against the United States itself. *See Dugan v. Rank*, 372 U.S. 609, 620 (1963). Such treatment is necessary because "the judgment sought would expend itself on the public treasury." *Id.*; *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, the BOP is a federal agency not subject to suit under *Bivens* and Johnson's claim against it is actually a claim against the United States. *See Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) (citing *Meyer*, 510 U.S. at 486–87) ("the

5

district court lacked subject matter jurisdiction over [plaintiff's] claims against the Bureau of Prisons because *Bivens* does not extend to federal agencies").

Johnson asserts a violation of his Eighth Amendment right, which is not cognizable against the United States because the United States has not waived its sovereign immunity regarding constitutional torts. *FDIC v. Meyer*, 510 U.S. at 475; *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued."); *JBP Acquisitions v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968) ("The immunity of the sovereign, however, extends to its agencies . . . and the officers of those agencies."). Sovereign immunity is "a complete bar to lawsuits against the United States." *State of Florida Dept. of Business Regulation v. U.S. Dept. of Interior*, 768 F.2d 1248, 1251 (11th Cir. 1985). Waivers of sovereign immunity must be "unequivocally expressed," and an expressed waiver will be strictly construed. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992) (citation omitted). The plaintiff bears the burden of establishing subject matter jurisdiction, and thus must prove an explicit waiver of immunity. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

In the FTCA, "Congress authorized a limited waiver of sovereign immunity[.]" *Martinez v. Minnis*, 257 F. App'x 261, 263–64 (11th Cir. 2007) (citing *Means v. United States*, 176 F.3d 1376, 1378–79 (11th Cir. 1999)). Johnson appropriately brought a claim against the United States under the FTCA. Therefore, I submit that Johnson's *Bivens* claim against the **BOP** should be **DISMISSED** and the defendant's motion to dismiss **GRANTED** on this point.

### ii. Cognizability under *Bivens*

As to the individual officers, in *Bivens* the Supreme Court recognized an implied right of action for damages against federal officers—sued in their individual capacities—for violations of the Fourth Amendment. 403 U.S. at 394–97. The Court extended the *Bivens* remedy in two other contexts: a Fifth Amendment equal protection claim for sex discrimination in employment, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and an Eighth Amendment claim against federal prison officials for failure to provide medical treatment, *Carlson v. Green*, 446 U.S. 14, 19–23 (1980). After deciding *Bivens*, *Davis*, and *Carlson,* the Supreme Court "adopted a far more cautious course before finding implied causes of action[,]" and thus, "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Ziglar*, 582 U.S. at 132, 135 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (citation omitted).

To determine whether a claim is actionable under *Bivens*, courts make a two-step inquiry. First, courts "ask whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up). Second, if the case presents a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 582 U.S. at 136).

Some courts have found that slight factual differences are enough to create a new context. *See Johnson v. Terry*, No. 1:18-cv-1899- AT-JSA, 2023 WL 3215538, at *7 (N.D. Ga. Jan. 30, 2023) (collecting cases among the federal circuit courts). Other courts note that this

approach would virtually eliminate *Bivens* actions and that the Supreme Court did not overrule *Bivens* or *Carlson*, and consequently allow deliberate indifference claims to proceed post-*Egbert* even though the facts do not exactly match *Carlson*. *See e.g.*, *Duncan v. United States*, No. 1:20-cv-1685-SEG, 2023 WL 2370479, at *4–6 (N.D. Ga. Feb. 27, 2023).

Johnson asserts an Eighth Amendment claim for deliberate indifference to a serious medical need. (Doc. 1). The Supreme Court has permitted only one *Bivens* claim under the Eighth Amendment when federal prison officials were deliberately indifferent to an asthmatic inmate's medical needs. *See Carlson*, 446 U.S. at 19–23. In *Carlson*, the plaintiff was housed at a facility with inadequate medical care against the advice of doctors despite his known medical condition. *Id.* at 16, 17 n.1. The defendant provided plaintiff inadequate medical care after an asthma attack, administered contra-indicated medication for his asthma attack, provided an inoperative respirator that impeded his breathing during an asthma attack, and did not timely transfer plaintiff to an outside hospital despite his asthma attack. *Id.* at 17.

Unlike *Carlson's* plaintiff, Johnson does not have asthma and did not die because of the defendant's alleged deliberate indifference. However, like the plaintiff in *Carlson*, Johnson alleges here that the defendants did not treat his known, existing, and life-threatening medical condition. (Doc. 1 at 15–25). Johnson also similarly alleges that the defendants knew of his need for specific treatment to address his medical condition, as instructed by a specialist, but the defendants did not comply with those instructions, and Johnson consequently suffered unnecessarily. (*Id.*).

In the case's current posture (that is, assuming the plaintiff's well pled facts to be true), I submit that Johnson's *Bivens* claim is sufficiently analogous to *Carlson*. *See Monk v. United States*, No. 1:22-CV-1030-CLM, 2023 WL 5019898, at *2 (N.D. Ala. Aug. 7, 2023) (allowing

a *Bivens* deliberate indifference claim to proceed when plaintiff "was at [a] high risk for complications from COVID-19" because of health issues that the prison officials ignored when deciding "whether and how to prevent [plaintiff] from contracting the virus and whether and how to treat him for the virus"); *Duncan v. United States*, 2023 WL 2370479, at *5 (allowing a *Bivens* deliberate indifference claim to proceed when plaintiff claimed that prison officials acted against medical orders by refusing to provide his medically prescribed diet and instead provided food that he was allergic to, and deprived him of medically necessary assistance"); *McKenith v. Odiumdo*, No. 1:21-CV-02350-AT-CCB, 2022 WL 22392209, at *2 (N.D. Ga. Oct. 25, 2022), *report and recommendation adopted*, No. 1:21-CV-2350-AT, 2022 WL 22392210 (N.D. Ga. Nov. 14, 2022) (finding plaintiff's deliberate indifference claim was cognizable under *Bivens* based on *Carlson* without further analysis); *Montalban*, No. 5:16-CV-405-OC-60PRL, 2021 WL 252339, at *2 (M.D. Fla. Jan. 26, 2021), *aff'd sub nom. Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800 (11th Cir. Sept. 21, 2022) (plaintiff's deliberate indifference claim was cognizable under *Bivens* based on *Carlson* when the defendant did not treat plaintiff's severe pain caused by a broken collar bone); *Shorter v. Barr*, No. 4:19CV108-WS/CAS, 2020 WL 1942785, at *12 (N.D. Fla. Mar. 13, 2020), *report and recommendation adopted*, No. 4:19CV108-WS/CAS, 2020 WL 1942300 (N.D. Fla. Apr. 22, 2020) (allowing a transgender inmate's gender dysphoria claim to proceed because "[a] *Bivens'* remedy is recognized in this context against prison officials for failing to adequately treat an inmate's medical condition"); *compare with Ketchup v. United States*, No. 23-13219, 2024 WL 2814462, at *2 (11th Cir. June 3, 2024) (plaintiff's claim that a prison official "knowingly let him drink contaminated water and failed to provide proper care thereafter present[ed]" a new *Bivens* context because it did not involve "a failure to provide medical care for *an existing and known*

*medical ailment*" but instead alleged the defendant "refused to take certain protective measures to prevent and then detect potential arsenic poisoning[]") (citations omitted) (emphasis added); *and Johnson v. Terry*, No. 1:18-CV-1899-AT-JSA, 2023 WL 3215538, at *8 (N.D. Ga. Jan. 30, 2023), *report and recommendation adopted in part*, No. 1:18-CV-1899-AT, 2023 WL 3215366 (N.D. Ga. Mar. 22, 2023) (plaintiff's case presented a new *Bivens* context when they received significant treatment for a chronic non-fatal condition unlike the *Carlson* plaintiff who received no medical care for a fatal condition).

### iii.   Eighth Amendment violation and qualified immunity

"To prevail on a deliberate indifference to [a] serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is "one that, if left unattended, 'pos[es] a substantial risk of serious harm[.]'" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing *Estelle v. Gramble*, 429 U.S. 97, 104 (1976); *Farmer*, 511 U.S. at 834). To demonstrate a defendant's deliberate indifference, a plaintiff must show that the "defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, No. 21-14275, 2024 WL 3354963, at *1, 3–4, 7 (11th Cir. July 10, 2024) (citing *Farmer*, 511 U.S. at 839) (clarifying confusion regarding whether the deliberate indifference standard requires "more than mere negligence" or "more than gross negligence" and holding that the correct standard is one of "subjective recklessness as used in the criminal law").

Only "indifference that can offend 'evolving standards of decency'" is "sufficiently harmful to evidence deliberate indifference to serious medical needs." *McElligott v. Foley*, 182

F.3d 1248, 1254 (11th Cir. 1999) (citation omitted). A "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (citation omitted). Further, "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he cannot be found liable . . . if he 'responded reasonably to th[at] risk.'" *Wade*, 2024 WL 3354963, at *1 (quoting *Farmer*, 511 U.S. at 844).

Johnson alleges that he suffers from Polycythemia Vera, a type of blood cancer. (Doc. 1 at 15, 19). If left untreated, Polycythemia Vera can lead to death or other serious medical complications such as heart attack, stroke, or blood clots. (*Id.*). Johnson also alleges that a hematologist told him that he requires weekly phlebotomies to stay alive. (*Id.* at 15). Therefore, I submit that Johnson alleges an objectively serious medical need and meets the first element. *See Taylor v. Adams*, 221 F.3d at 1258. I will address the medical staff defendants' alleged deliberate indifference separately from that of the warden staff defendants.

### 1. Li and Berman's deliberate indifference

When Johnson first arrived at Coleman in October 2020, he informed an intake medical staff member about his Polycythemia Vera and need for weekly phlebotomies. (Doc. 1 at 18). The staff member told Johnson that Li already reviewed his medical records and Johnson would receive a phlebotomy soon. (*Id.*). After not receiving any treatment, Johnson complained to Li and Berman at least twice in November about his Polycythemia Vera symptoms and need for treatment. (*Id.*). When Johnson complained about his symptoms, he also told Li and Berman about the risks he faced if he did not receive timely phlebotomies. (*Id.*). In December, Li finally examined Johnson. (*Id.* at 18–19). During the examination, Johnson complained to Li about his symptoms and begged for treatment. (*Id.* at 19). In

response, Li told Johnson no one received timely treatment, he did not care about Johnson's treatment, and to get out of his office. (*Id.*).

In February 2021, Johnson went to health services for blood work where he encountered Li and complained about his Polycythemia Vera symptoms. (*Id.*). Li responded by telling Johnson to get out of his face or he would send him to the special housing unit. (*Id.* at 20). In March, April, May, and June, Johnson submitted "several paper sick call requests" to Li and Berman that they ignored. (*Id.* at 21). In July, when Johnson finally received a phlebotomy at the Florida Cancer Center, the hematologist informed Li and Berman that Johnson's Polycythemia Vera was "uncontrolled" and advised them of the necessity that Johnson receive timely phlebotomies and the risks if he does not. (*Id.* at 22). In August and September, Johnson sent "several" paper requests to Li and Berman, complaining of his symptoms and requesting treatment, that they ignored. (*Id.* at 23). In October, Johnson emailed Li directly to complain that he was suffering from Polycythemia Vera symptoms, but Li did not reply. (*Id.*). Johnson did not receive another phlebotomy until December 2021. (*Id.*).

Johnson alleges that he complained directly to Li and Berman about his symptoms and requested treatment at least ten times in a twelve-month period. Thus, Johnson alleges Li and Berman's actual knowledge of the fact that he was suffering. *Compare Gonzalez v. Archer*, 725 F. App'x 739, 742 (11th Cir. 2018) ("the district court should not have dismissed [plaintiff's] claim at" the motion to dismiss phase when plaintiff alleged that he pleaded numerous times for defendant to prescribe him an antiacid because of his painful symptoms); *with Ruiz v. Rummel*, 777 F. App'x 410, 415 (11th Cir. 2019) (plaintiff did not allege that

defendants knew of a substantial risk to him when he did not allege that the defendants knew of his grievances or constant complaints about his condition).

In addition, Johnson alleges that both he and a hematologist told Li and Berman that he had Polycythemia Vera—a type of cancer—that needed regular treatment otherwise he could face serious complications, including death. Therefore, at this point in the proceedings, Johnson alleges that Li and Berman knew their conduct in denying Johnson treatment created a substantial risk to Johnson's health and safety. *See Wade*, 2024 WL 3354963, at \*5–7 ("[A] deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff."); *see e.g.*, *Estrada v. Stewart*, 703 F. App'x 755, 760 (11th Cir. 2017) (plaintiff "stated a plausible claim" that defendants "knew the extent of [his] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [his] condition" when, "[a]fter being diagnosed with jaundice and damage to his liver, gall bladder, and lungs, defendants did not follow the hospital provider's ordered treatment plan and ignored plaintiff['s] repeated[] request[s] for medical care for about a year[]"); *Brennan v. Comm'r, Alabama Dep't of Corr.*, 626 F. App'x 939, 942 (11th Cir. 2015) (plaintiff "alleged sufficient facts to draw an inference that [defendant] knew of the risk of harm and disregarded that risk[]" when plaintiff alleged that he constantly complained of severe pain and requested treatment); *Farrow v. West*, 320 F.3d 1235, 1246–47 (11th Cir. 2003) ("A jury accepting [plaintiff's] account . . . would be entitled to find that [defendant] was deliberately indifferent to [plaintiff's] serious medical need[]" when plaintiff repeatedly told defendant "about his pain, weight loss, bleeding gums, and soft diet[.]"); *McElligott*, 182 F.3d at 1256 ("there was sufficient evidence to permit a jury to infer that the defendants in this case knew of a

substantial risk of harm to" plaintiff who was eventually diagnosed with colon cancer because of his "nearly constant complaints [to defendants] about" his abdominal pain for six months and the defendant's examination notes indicating that he was aware of plaintiff's pain); *Steele v. Shah*, 87 F.3d 1266 (11th Cir. 1996) (a jury could find a jail psychiatrist was aware that discontinuing plaintiff's psychotropic prescription posed a substantial risk to plaintiff when plaintiff was on a treatment plan for being a potential suicide risk at his former prison, plaintiff protested the discontinuation, and plaintiff's former prison providers called and wrote the jail psychiatrist to make it clear that plaintiff was a suicide risk); *Tavanese v. Pippin*, No. 18-20696-CV, 2018 WL 9684331, at *8 (S.D. Fla. Mar. 2, 2018), *report and recommendation adopted*, No. 18-20696-CIV, 2018 WL 9684296 (S.D. Fla. Aug. 28, 2018) (plaintiff's allegations were sufficient to proceed past a motion to dismiss when he alleged that he told a medical provider upon his arrival at the prison that he had Hepatitis C and asked for treatment, but the provider discontinued all treatment despite plaintiff's declining condition and his suffering); *compare with Mann v. Sec'y, Dep't of Corr.*, No. 21-11445, 2021 WL 5112647, at *1, 3–4 (11th Cir. Nov. 3, 2021) (plaintiff did not put forth sufficient evidence to demonstrate that the defendant perceived a risk of serious harm to plaintiff when, in response to sporadic complaints, prison doctors examined plaintiff, conducted testing and further evaluation, and eventually diagnosed him with cancer); *and Stanfield v. Darbouze*, No. 2:14CV907-CSC, 2017 WL 2637399, at *7, 8 (M.D. Ala. June 19, 2017) (Plaintiff did not demonstrate defendant's knowledge that his conduct posed a substantial risk of harm to plaintiff, when, each time he submitted a sick call request he was evaluated and providers initiated treatment plans based on his medical history).

14

Based on the allegations, neither Li nor Berman provided any treatment at all while Johnson awaited a phlebotomy—other than advising Johnson to drink water—let alone treatment that would be reasonable to the risk. Therefore, I submit that Johnson's allegations that Li and Berman delayed treatment of his Polycythemia Vera are sufficient to allege deliberate indifference to his serious medical need at this point in the proceedings. *See Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995)) ("Delays in medical treatment 'that [are] tantamount to unnecessary and wanton infliction of pain[] may constitute deliberate indifference.'"); *Farrow*, 320 F.3d at 1246–47 (citations omitted) (a delay in providing medical care "may constitute deliberate indifference in some circumstances[,]" and may be tolerable in others); *McElligott*, 182 F.3d at 1255 ("We have repeatedly found that 'an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care but he fails'" to obtain or delays medical treatment "[e]ven where medical care is ultimately provided[.]") (citing *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Harris v. Coweta County*, 21 F.3d 388, 393–94 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537–39 (11th Cir. 1990); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989)); *compare with Terry v. Withers*, No. 5:24-CV-21-SPC-PRL, 2024 WL 3033921, at *1 (M.D. Fla. May 8, 2024) (The defendants were not deliberately indifferent because they examined plaintiff and provided some treatment).

Johnson is reminded that "a plaintiff seeking to show that a delay in medical treatment rose to a constitutional violation 'must place verifying medical evidence in the record to establish the detrimental effect of [the] delay[.]'" *Cunningham v. Li*, No. 5:15-CV-305-OC-10PRL, 2017 WL 6610881, at *6 n.6 (M.D. Fla. Oct. 12, 2017) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). To survive a motion for summary

judgment, Johnson must secure medical expert testimony and other documentary evidence that supports his claim.[4] *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020).

Li and Berman assertion of qualified immunity is unavailing. (Doc. 20 at 21). "Under the doctrine of qualified immunity," a plaintiff suing a government official for damages must show that the official "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *McElligott*, 182 F.3d at 1260 (citing *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotations omitted). The Eleventh Circuit has found that the issue of whether defendants exhibit deliberate indifference when they knowingly delay care to a suffering inmate "is clearly established [g]iven the abundance of caselaw from our circuit defining the parameters of deliberate indifference[.]" *See McElligott*, 182 F.3d at 1256, 1260 (a prison dentist was not entitled to qualified immunity, after a fifteen-month delay without reasonable explanation in procuring dentures for a prisoner he knew was suffering, because the Eighth Amendment's application to the case was "clearly established at the time of the events in question); *Harris*, 21 F.3d at 393. Therefore, I submit that, at this time, Johnson alleges enough to bring a claim against Li and Berman that is not barred by qualified immunity, and the motion to dismiss should be **DENIED** as to them.

### 2.  Antonelli and Graham's Deliberate Indifference

Johnson details one encounter with Antonelli in which he claims he told Antonelli, during a walkthrough of his unit, about the medical staff's failure to treat his Polycythemia

---

[4] In their motion to dismiss, the defendants argue that Johnson presented "no evidence" to support his claim. Their argument holds little weight at this point in the proceedings as the proper standard on a motion to dismiss is whether Johnson's allegations are sufficient to state a claim upon which relief may be granted, not whether he can prove his claim. At this phase, Johnson's allegations are sufficient against Li and Berman.

16

Vera. (Doc. 1 at 19). In response, Antonelli said he did not have time to deal with the issue. (*Id.*). Johnson only details two encounters with Graham, in which Graham responded to Johnson's grievances against medical staff. (*Id.* at 20, 24). In the first response Graham stated that a plan of care was being put in place for Johnson, and in the second response Graham stated that a new consultation would be ordered for Johnson. (*Id.*).

Johnson can attribute liability to Antonelli and Graham in one of two ways. First, Johnson could allege that Antonelli and Graham, as wardens, were responsible for instituting a custom or policy of deliberate indifference that led to the violation of his rights. *See Ireland v. Prummell*, 53 F.4th 1274, 1289 (11th Cir. 2022) (citation omitted). Johnson does not mention that any policies or customs caused the violation of his rights and must therefore show their liability in the second way, by alleging that Antonelli and Graham personally participated in the constitutional violation. *See id.* Neither defendant can be liable solely because of their position as a supervisor. *Fulwood v. Fed. Bureau of Prisons*, 568 F. App'x 753, 756 (11th Cir. 2014) (citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)) ("Supervisory officials are not liable through respondeat superior or vicarious liability for the unconstitutional acts of subordinates.").

The sole basis for Johnson's claim against Antonelli and Graham is that they denied his requests for help. Antonelli and Graham were "entitled to rely on medical judgments made by medical professionals responsible for prisoner care." *See Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)); *Kline v. Maiorana*, No. 3:21CV1006-LC-HTC, 2022 WL 980280, at *5 (N.D. Fla. Feb. 8, 2022), *report and recommendation adopted*, No. 3:21CV1006-LC-HTC, 2022 WL 972428 (N.D. Fla. Mar. 31,

2022) (citing *Allah v. Gramiak*, 2014 WL 824217, at *7 (M.D. Ga. Mar. 3, 2014)) ("there is no law that establishes that in determining whether to deny a medical grievance, a [w]arden must take additional steps or" investigate "after such a grievance was denied to assure that [p]laintiff received his requested medical equipment"); *Mathis v. Corizon Health Inc.*, No. 3:14CV469/MCR/EMT, 2015 WL 3651088, at *5 (N.D. Fla. June 11, 2015) (a warden's deference to a doctor's "decisions regarding [p]laintiff's medical treatment was objectively reasonable"). Antonelli and Graham cannot be held liable solely because they failed to intercede in Johnson's medical treatment. *See Hines v. Parker*, 725 F. App'x 801, 805 (11th Cir. 2018) (the district court did not err in dismissing a complaint when a warden, who made no decisions involving a plaintiff's treatment, failed to intercede in plaintiff's "treatment after receiving his medical grievances[]"); *Kiser v. Bradley*, No. 720CV00562ACAHNJ, 2023 WL 3690261, at *10 (N.D. Ala. May 1, 2023), *report and recommendation adopted*, No. 720CV00562ACAHNJ, 2023 WL 3690241 (N.D. Ala. May 26, 2023); *Gillis v. Smith*, No. 522CV00027TESCHW, 2022 WL 1516311, at *8 (M.D. Ga. May 13, 2022), *report and recommendation adopted*, No. 522CV00027TESCHW, 2022 WL 2287929 (M.D. Ga. June 24, 2022) (collecting cases among the federal circuit courts) ("[a] supervisor is not 'personally involved' in a constitutional violation merely because he fails to respond to complaints from a prisoner[]"); *Kline v. Maiorana*, 2022 WL 980280, at *4 (collecting cases among the federal circuit courts) ("Filing a grievance with a supervisory person does not, alone, make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied."); *Magwood v. Fla. Dep't of Corr.*, No. 3:12CV14/MCR/CJK, 2012 WL 5279178, at *4 (N.D. Fla. Oct. 11, 2012), *report and recommendation adopted*, No. 3:12CV14/MCR/CJK, 2012 WL 5279170 (N.D. Fla. Oct. 25, 2012); *Rickerson v. Gills*,

No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb. 8, 2012), *report and recommendation adopted*, 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012) (finding a prisoner failed to state a § 1983 claim against a prison official whose sole involvement was to review and deny plaintiff's administrative grievance).

Furthermore, the two single interactions that Johnson had with Antonelli and Graham are not sufficient to demonstrate their subjective knowledge that *their* conduct posed a substantial risk to Johnson's health and safety. *See Wade*, 2024 WL 3354963, at *5–7; *Farmer*, 511 U.S. at 838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment[]"). Nor are these interactions sufficient to demonstrate a causal connection between the violation of Johnson's rights and Antonelli and Graham's conduct when Johnson does not allege that Antonelli or Graham prevented him from receiving treatment. *See Hines*, 725 F. App'x at 805 (citing *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047 (11th Cir. 2014)) (finding plaintiff did not establish a causal connection when the warden failed to intercede in treatment after receiving a grievance). In short, Johnson fails to allege sufficient facts to show that either Antonelli or Graham acted with deliberate indifference to his Eighth Amendment rights. Therefore, I submit that Johnson's *Bivens* claim against **Antonelli and Graham** should be **DISMISSED** and the defendants' motion to dismiss **GRANTED** as to them.

### b. FTCA Claim against the United States

Johnson also seeks relief against the United States under the FTCA. (Doc. 1 at 27). He alleges that the United States – through Coleman's medical staff – was negligent in failing to provide him with timely treatments. (*Id.*). And that the United States breached its duty of

care. (*Id.*). In the motion to dismiss the defendants do not address his FTCA claim; thus, it will proceed.

## IV.    Recommendation

I submit that the defendant's motion to dismiss should be granted in part and denied in part. The motion should be granted to the extent that the Federal Bureau of Prisons, Antonelli, and Graham should be dismissed from this case. The motion should be denied to the extent that Johnson's *Bivens* claims against Li and Berman should proceed.

Recommended in Ocala, Florida on this 24th day of July 2024.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

**COPIES FURNISHED TO:**
Presiding District Judge
Counsel of Record
Corey L. Johnson, pro se
Courtroom Deputy