UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**COREY L. JOHNSON,**

    Plaintiff,

v.                                      Case No. 5:23-cv-207-WFJ-PRL

**UNITED STATES OF AMERICA,**

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's motion for summary judgment. (Doc. 71). The Court has not received Mr. Johnson's response to the motion and his time to file one is expired. (*See* Doc. 66). After careful consideration, the Court grants Defendant's motion for summary judgment.

### I.    MR. JOHNSON'S FACTUAL ALLEGATIONS

Mr. Johnson is an inmate in the Federal Bureau of Prisons' custody since 2008. (Doc. 1 at 14). Before 2019, Mr. Johnson had no serious medical diagnoses. (Doc. 1 at 14). In March 2019, Mr. Johnson arrived at United States Penitentiary, Big Sandy ("Big Sandy") where he began experiencing "internal itch, daily fatigue, abdominal pain . . . , blurred vision, and spotted skin discoloration." (Doc. 1 at 14). A medical provider at Big Sandy performed Mr. Johnson's blood work that showed a high red blood cell count, high hematocrit levels, and high hemoglobin levels. (Doc. 1 at 14).

Mr. Johnson followed up with the medical staff at Big Sandy in August and September 2019 who told Mr. Johnson there was nothing wrong with him. (Doc. 1 at 14).

In December 2019, Mr. Johnson went to Highland Cancer Center where providers performed blood work, diagnosed him with Polycythemia Vera—a type of blood cancer—and performed a phlebotomy to treat him. (Doc. 1 at 15). The Highland provider told Mr. Johnson he must receive weekly phlebotomies to stay alive. (Doc. 1 at 15). Mr. Johnson returned to Highland monthly for treatments but complained to providers at Big Sandy and filed grievances regarding their failure to administer weekly treatments. (Doc. 1 at 16). In 2020, Mr. Johnson was unable to receive his outside medical treatments from March to September because of COVID-19, and health services would not administer the treatments despite Mr. Johnson's requests. (Doc. 1 at 16–17). During this time, Mr. Johnson continued experiencing Polycythemia Vera symptoms. (Doc. 1 at 17).

In October 2020, Mr. Johnson was transferred to the United States Penitentiary, Coleman (Coleman). (Doc. 1 at 17). Mr. Johnson notified the intake medical staff about his condition, and they told him he would receive his treatment in the upcoming weeks. (Doc. 1 at 18). In November, Mr. Johnson complained to Dr. Li and Mr. Berman,[1] verbally and in writing, that he was suffering from Polycythemia Vera symptoms. (Doc. 1 at 18). In December, Mr. Johnson had his first visit with Dr. Li

---

[1] Dr. Richard Li is the lead medical director at Coleman. (Doc. 1 at 13). Michael Berman is the assistant health services administrator responsive for day-to-day operations of health services at Coleman. (Doc. 1 at 13).

during which he complained of his symptoms—internal itch, bloat, abdominal pain, fatigue, dizziness, and blurred vision—and requested a phlebotomy. (Doc. 1 at 18–19). Dr. Li refused to treat Mr. Johnson, would not refer Mr. Johnson to a hematologist, and told Mr. Johnson he was on a waiting list for treatment but no one received timely treatment at the prison. (Doc. 1 at 19). When Mr. Johnson advised Dr. Li of the risks of him not receiving a phlebotomy—heart attack, stroke, and clogged arteries—Dr. Li told Mr. Johnson he would be fine and to drink a lot of water. (Doc. 1 at 19).

In February 2021, Coleman providers performed blood labs on Mr. Johnson which showed his elevated high red blood cell count, high hematocrit levels, and high hemoglobin levels. (Doc. 1 at 20). When Mr. Johnson encountered Dr. Li, he refused to talk to Mr. Johnson. (Doc. 1 at 20). From March to June 2021, Mr. Johnson submitted many sick call requests to health services explaining that he was suffering, but Dr. Li and Mr. Berman ignored the requests. (Doc. 1 at 21). Mr. Johnson also filed grievances against Dr. Li. (Doc. 1 at 20). Warden Graham responded to Mr. Johnson's grievances about Dr. Li's failure to treat him and stated that a plan of care was being put in place for Mr. Johnson. (Doc. 1 at 20).

In July 2021, after nine months, Mr. Johnson finally received a phlebotomy at the Florida Cancer Center. (Doc. 1 at 22). The hematologist at Florida Cancer Center told Dr. Li and Mr. Berman that Mr. Johnson could experience severe illness or death without timely treatment. (Doc. 1 at 22). The hematologist increased Mr. Johnson's aspirin prescription to thin his blood and prevent clogged arteries. (Doc. 1 at 22).

3

Mr. Johnson did not receive any treatments again until December 2021 despite making multiple sick call requests. (Doc. 1 at 23). In October 2021, Mr. Johnson emailed Dr. Li to follow up on his unanswered sick calls, but Dr. Li did not respond. (Doc. 1 at 23). Mr. Johnson continued to file grievances against Dr. Li. (Doc. 1 at 23). Warden Graham responded by alerting Mr. Johnson that a new consultation was being ordered for him. (Doc. 1 at 24).

On January 18, 2022, an ultrasound revealed that Mr. Johnson had a mild hepatomegaly and borderline splenomegaly. (Doc. 1 at 24). In April 2022, Mr. Johnson received his third phlebotomy since he arrived at Coleman. (Doc. 1 at 24). In May, June, July, August, September, October, November, and December 2022, and January 2023, Mr. Johnson received phlebotomies. (Doc. 1 at 24–25). In March 2023, after not receiving phlebotomies in February and March, Mr. Johnson initiated this suit for medical negligence under the Federal Tort Claims Act. (Doc. 1 at 25).

## II.   SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As such, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corat v.*

*Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Hickson Corat v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). That burden is discharged if the moving party can show that there is "an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (quoting *Celotex*, 477 U.S. at 324). If the moving party discharges its burden, the nonmoving party must identify specific facts showing that there is a genuine issue of material fact. *Four Parcels of Real Property*, 941 F.2d at 1437–38 (citing Fed. R. Civ. P. 56(e)).

An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen*, 121 F.3d at 646 (quoting *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the case. *Id.* When determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. Ultimately, summary judgment should be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### III.   DISCUSSION

Mr. Johnson brings one claim for medical negligence under the FTCA in which he argues that Defendant's employees negligently treated his Polycythemia Vera and he consequently suffers from painful symptoms. (Doc. 1 at 27). The FTCA is a limited waiver of the United States' sovereign immunity. *Means v. United States*, 176 F.3d 1376, 1378–79 (11th Cir. 1999). The limited waiver of sovereign immunity only applies when federal employees commit torts "while acting within the scope of [their] office or employment." *Id.* (quoting 28 U.S.C. § 1346(b)(1)). Courts apply the tort laws of the state in which the alleged tort occurred. *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004); *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (citing 28 U.S.C. § 1346(b)(1)).

As Mr. Johnson's injury occurred at Coleman, located in Florida, his claim is governed by Florida law. (Doc. 1 at 14–27). "Under Florida law, '[t]o prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that [the] breach proximately caused the damages claimed.'" *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)); Fla. Stat. § 766.102(1). To establish the standard of care, the plaintiff must present expert testimony. *Whittaker v. Sanchez*, 2021 WL 4495808, at *3 (11th Cir. Oct. 1, 2021) (citing *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995)); *Lambert v. United States*, 198 F. App'x 835, 839 (11th Cir. 2006).

"Expert testimony is not necessary wh[en] only the exercise of common sense and ordinary judgment are required to prove medical negligence." *Whittaker*, 2021 WL 4495808, at *3 (citations omitted); *Atkins v. Humes*, 110 So. 2d 663, 665 (Fla. 1959) (citations omitted) (This exception applies "in cases where want of skill or lack of care on the part of the physician or surgeon is so obvious as to be within the understanding of laymen and to necessitate only common knowledge and experience to judge it."). Importantly, this exception applies when an approved medical treatment is administered in a careless or unskillful way, not when the claim is "based on an incorrect diagnosis or the adoption of the wrong method of treatment[.]"[2] *Atkins*, 110 So. 2d at 666; *Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977); *Dohr v. Smith*, 104 So. 2d 29, 31 (Fla. 1958).

Defendant moves for summary judgment because Mr. Johnson failed to obtain an expert. (Doc. 71 at 4–11). The common sense and ordinary judgment exception does not apply to this case because Mr. Johnson's claim is not based on Coleman officials' application of the correct treatment in a negligent way, but instead, is based on their failure to treat him by denying his requests for regular phlebotomies. *See*

---

[2] Examples of cases in which a jury could find the defendant negligent without an expert include when a provider "permit[s] a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh; [] fail[s] to sterilize surgical instruments before performing an operation[;] [] cut[s] off part of a patient's tongue in removing adenoids; [or] perforate[s] the urethra in performing an operation[.]" *Atkins v. Humes*, 110 So. 2d at 666; *see Merola v. Stang*, 130 So. 2d 119, 120 (Fla. 3rd DCA 1961) ("there was no need for a medical expert to inform the jury that [] a dentist, who sliced "through the patient's lower lip and cut [their] face to the point of the chin" "while using a drill on a tooth" could be found negligent); *Dohr*, 104 So. 2d at 31 (the exception applied when a patient was injured because an anesthetist who examined a patient's mouth to find out whether she had false teeth before an operation did not discover the patient's two false teeth).

*Atkins*, 110 So. 2d at 666. Thus, Mr. Johnson requires an expert to support his claim. *See Whittaker*, 2021 WL 4495808, at *3 (citing *Pate*, 661 So. 2d at 281). The Court has not received an expert report disclosure from Mr. Johnson and his time to file one is expired. (*See* Doc. 61). Furthermore, even if an expert was not required, this Court has already undertaken an extensive discussion of the evidence Mr. Johnson placed on the record and how it does not support his claim.[3] (Doc. 60 at 3–6).

Because Mr. Johnson did not disclose an expert by the deadline, the motion for summary judgment is **GRANTED**. *See Celotex*, 477 U.S. at 323 ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial[]" and entitles a moving party "to a judgment as a matter of law"); *Whittaker*, 2021 WL 4495808, at *3 ("Where a defendant shows that a plaintiff is unable to present evidence of the negligence he alleges in his complaint, no genuine issue of material fact exists, and summary judgment may be granted against him.") (citing *Sims*, 345 So. 2d at 724); *Lambert*, 198 F. App'x at 839 (affirming the district court's dismissal of an FTCA medical malpractice claim when plaintiff did not submit expert medical testimony prior to trial).

## IV.   CONCLUSION

Accordingly, it is hereby

**ORDERED and ADJUDGED**:

---

[3] In response to Mr. Johnson's motion to appoint an expert (Doc. 55), the Court ordered him to justify the appointment of an expert by submitting evidence to demonstrate the merit of his claim. (Doc. 58). Upon review of the evidence, comprised mainly of Mr. Johnson's medical records, the Court denied the motion. (Doc. 60).

1. Defendant's motion for summary judgment (Doc. 71) is **GRANTED**.

2. The Clerk is directed to enter final judgment in Defendant's favor.

3. The Clerk is directed to terminate any pending motions and deadlines and close this case.

   **DONE AND ORDERED** in Tampa, Florida on January 5, 2026.

   _____
   WILLIAM F. JUNG
   UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Plaintiff, pro se
Counsel of record